# EXHIBIT 1

# Part 4 – General Conditions

*Bechtel National, Inc.*
*Hanford Tank Waste Treatment and Immobilization Plant (WTP)*

Purchase Order No.: ***24590-QL-POA-JA03-00006***
Rev.: ***0***

---

**Table of Contents**

GC-1 **ENTIRE AGREEMENT** ....3
GC-2 **DEFINITIONS** ....3
GC-3 **PURCHASE ORDER INTERPRETATION** ....3
GC-4 **WASHINGTON STATE SALES TAX-DIRECT PAY PERMIT AND RESALE CERTIFICATES** ....4
GC-5 **CHANGES** ....4
GC-6 **PRICING OF ADJUSTMENTS** ....4
GC-7 **PRICE AND PAYMENT** ....4
GC-8 **EXCUSABLE DELAYS** ....5
GC-9 **TITLE AND RISK OF LOSS** ....6
GC-10 **EXPEDITING** ....7
GC-11 **QUALITY STANDARDS** ....7
GC-12 **RECORDS AND AUDIT** ....8
GC-13 **WARRANTIES AND GUARANTEES** ....8
GC-14 **LAWS AND REGULATIONS** ....9
GC-15 **GOVERNMENT RESTRICTED PARTIES AND COMMODITIES** ....9
GC-16 **USE OF TECHNICAL DATA** .... 10
GC-17 **ASSIGNMENT** .... 10
GC-18 **SUSPENSION** .... 11
GC-19 **TERMINATION FOR CONVENIENCE** .... 11
GC-20 **TERMINATION FOR DEFAULT** .... 11
GC-21 **NON-WAIVER** .... 12
GC-22 **APPLICABLE LAW** .... 12
GC-23 **REPRESENTATIONS AND CERTIFICATIONS** .... 12
GC-24 **DISPUTES** .... 13
GC-25 **SELLER TERMS AND CONDITIONS EXCLUDED** .... 14
GC-26 **AUTHORIZED REPRESENTATIVES AND NOTICES** .... 14
GC-27 **INSURANCE FOR GOODS IN TRANSIT** .... 15
GC-28 KEY PERSONNEL .... 16
GC-29 **AUTHORITY OF PERSONNEL** .... 17
GC-30 **SAFETY FOR BUYER AND OWNER REPRESENTATIVES** .... 17
GC-31 **LABOR DISPUTES** .... 17
GC-32 **NONDISCLOSURE, PUBLICITY, AND ADVERTISING** .... 17
GC-33 **BACKCHARGES** .... 18
GC-34 **RELEASE AGAINST LIENS AND CLAIMS** .... 20
GC-35 **HAZARDOUS AND TOXIC SUBSTANCES DISCLOSURE REQUIREMENTS** .... 20
GC-36 **BUY AMERICAN ACT—CONSTRUCTION MATERIALS UNDER TRADE AGREEMENTS** .... 20
GC-37 **QUALITY ASSURANCE PROGRAM (QAP)** .... 22
GC-38 **NUCLEAR SAFETY AND INDEMNITY** .... 22
GC-39 **LANGUAGE REQUIREMENTS** .... 23
GC-40 **SYSTEM OF WEIGHTS AND MEASUREMENTS** .... 23
GC-41 **BUYER FURNISHED EQUIPMENT (INCLUDING MATERIALS)** .... 23
GC-42 **SUSPECT/COUNTERFEIT ITEMS** .... 24
GC-43 **NUCLEAR SOURCE EQUIPMENT** .... 25
GC-44 **INFRINGEMENT** .... 26
GC-45 **MODIFICATIONS TO GENERAL CONDITIONS** .... 26
GC-46 **GOVERNMENT FLOWDOWNS** .... 27
ATTACHMENT A - RESTRICTED MATERIALS LIST .... 33

© 2009 Bechtel National, Inc., All Rights Reserved

**Part 4 – General Conditions**

*Bechtel National, Inc.*
*Hanford Tank Waste Treatment and Immobilization Plant (WTP)*
Purchase Order No.: ***24590-QL-POA-JA03-00006***
Rev.: ***0***

ATTACHMENT B - PARTIAL RELEASE AND CERTIFICATE OF PAYMENT FORM ........ 33
ATTACHMENT C - RELEASE AND CERTIFICATE OF FINAL PAYMENT FORM ........ 33
ATTACHMENT D - BUY AMERICAN ACT/TRADE AGREEMENTS ACT - MATERIAL CONFORMANCE STATEMENT FORM ........ 33
ATTACHMENT E - BUYER'S GOVERNMENT OWNED EQUIPMENT/MATERIALS FURNISHED TO SELLER. 33
ATTACHMENT F - DEPARTMENT OF ENERGY AND/OR DEPARTMENT OF COMMERCE SUBCONTRACTOR PRE-QUALIFICATION CERTIFICATION ........ 33
ATTACHMENT G - SECURITY PLAN FOR THE PROTECTION OF EXPORT CONTROLLED INFORMATION. 33
ATTACHMENT H - SMALL BUSINESS SUBCONTRACTING PLAN ........ 33
ATTACHMENT I - WTP FTP REQUEST ........ 33

© 2009 Bechtel National, Inc., All Rights Reserved
KA04a Part 4 – General Conditions (Commercial)
24590-AF00379 (Rev 8 09/19/13)

Part 4 – Page 2 of 33
PURCHASE ORDER NO: 24590-QL-POA-JA03-00006
Rev. 0



## Part 4 – General Conditions

### GC-1 ENTIRE AGREEMENT

This PURCHASE ORDER embodies the entire Agreement between BUYER and SELLER. The parties shall not be bound by or liable for any statement, representation, promise or understanding not set forth herein. Nothing contained in proposals, correspondence, discussions, order acknowledgments or other of SELLER'S forms has any effect on this PURCHASE ORDER unless specifically incorporated herein.

### GC-2 DEFINITIONS

"PURCHASE ORDER" means this agreement, including the General Conditions, all attachments, sections, exhibits, schedules, and revisions hereto (each of which is hereby incorporated herein by reference), as issued from time to time.

"BECHTEL" or Bechtel means Bechtel National, Inc.

"BUYER" means BECHTEL. To the extent that BUYER is not the ultimate consumer of the PRODUCT(S) being herein purchased, all rights, benefits and remedies conferred upon BUYER by this PURCHASE ORDER shall also accrue and be available to and are for the express benefit of OWNER for which the PRODUCT(S) are purchased.
"SELLER" means the company, corporation, partnership, individual, or other entity to which this PURCHASE ORDER is issued, its authorized representatives, successors, and permitted assigns.

"OWNER" means the United States of America, including the U. S. Department of Energy (DOE), and their authorized representatives and successors in interest for whose benefit the PRODUCT(S) are purchased.

"PRODUCT" or "PRODUCT(S) mean the goods, materials, articles, equipment, supplies, drawings, data, processes and all other property and services, including design, expediting, inspection, delivery, installation, and testing, specified or required to furnish the items ordered hereunder, which are required in the performance of Prime Contract No. DE-AC27-01RV14136 with the OWNER.

"Project" means the Hanford Tank Waste Treatment and Immobilization Plant (WTP) for OWNER under Prime Contract No. DE-AC27-01RV14136 located at the DOE Hanford Site, near Richland, Washington.

"Jobsite" or "Construction Site" or "WTP Site" or "Onsite" are synonymous terms and mean the location in the 200 East area of the DOE Hanford Site, the Marshalling Yard, the Material Handling Facility, near Richland, Washington.

### GC-3 PURCHASE ORDER INTERPRETATION

All questions concerning interpretation or clarification of this PURCHASE ORDER or applicable standards and codes, (including the discovery of conflicts, discrepancies, errors or omissions) or the acceptable performance thereof by SELLER, shall be immediately submitted in writing to BUYER for resolution. Subject to the provisions of the clause titled "CHANGES," all determinations, instructions and clarifications of BUYER shall be final and conclusive unless determined to have been fraudulent or capricious, or arbitrary, or so grossly erroneous as to imply bad faith, or not subject to substantial evidence.

© 2009 Bechtel National, Inc., All Rights Reserved

## GC-4 WASHINGTON STATE SALES TAX-DIRECT PAY PERMIT AND RESALE CERTIFICATES

(a) BUYER has a Direct Pay Permit from the State of Washington for sales and use tax. SELLER will be provided with a copy of BUYER'S Direct Pay Permit or Resale Exemption Certificate upon award of this PURCHASE ORDER.
(b) With respect to any purchases covered by BUYER'S Direct Pay Permit or Resale Exemption Certificate, SELLER shall not include, or be reimbursed for any Washington sales or use taxes, except as provided in subclause (c) below.
(c) The requirement of subclause (b) shall not apply to any Washington sales or use taxes the SELLER pays to any lower-tier suppliers in connection with purchase orders or subcontracts from such lower tier vendors, suppliers, or subcontractors with a value of $10,000 or less. SELLER shall provide BUYER proof of payment of any such Washington sales or use tax.
(d) SELLER shall issue Resale Exemption Certificates to all lower-tier suppliers where applicable.

## GC-5 CHANGES

(a) BUYER, through its authorized procurement representative, may at any time direct, in writing, changes, including but not limited to changes in any one or more of the following: (1) drawings or specifications; (2) additions to or deletions from quantities ordered; (3) delivery schedule; (4) method of shipment or packing; (5) place of delivery. If any such change causes an increase or decrease in the cost of or timing required to provide the PRODUCT(S), an equitable adjustment may be made in the price or delivery schedule, or both, and the PURCHASE ORDER shall be modified by written amendments or revisions executed by authorized representatives. Any request by the SELLER for adjustment under this Changes clause must be asserted within thirty (30) days from the date of receipt by the SELLER of the notification of change. However, nothing in this clause shall excuse SELLER from proceeding with the order as changed.
(b) If this PURCHASE ORDER requires BUYER to review and comment on SELLER'S technical documents, SELLER shall submit, within thirty (30) days from the date of SELLER'S receipt of such comments, any request for adjustment which would result from implementation of BUYER'S comments. No adjustment will be made hereunder unless BUYER, through its authorized procurement representative, confirms the change in writing.
(c) No modifications of the terms of this PURCHASE ORDER shall be valid unless reduced to writing and signed by both parties.

## GC-6 PRICING OF ADJUSTMENTS

In addition to rights provided under other provisions of this PURCHASE ORDER, BUYER shall have the right to, and SELLER shall provide at BUYER'S request, price and/or cost information, other than certified cost or pricing data to support the Buyer's analysis of Seller's price adjustment proposals in accordance with Federal Acquisition Regulation (FAR) Part 15, Subpart 15.4, "Contract Pricing." SELLER is responsible for providing price and/or cost information that is adequate for BUYER to determine whether the proposed price is fair and reasonable.

## GC-7 PRICE AND PAYMENT

(a) The prices herein specified, unless otherwise expressly stated, shall exclude all taxes and duties of any kind which either party is required to pay with respect to the sale of PRODUCT(S) covered by this PURCHASE ORDER, but shall include all charges and expenses in connection with the packing of the PRODUCT(S) and their carriage to the place of delivery to the BUYER unless specifically excluded. SELLER shall be paid, except as otherwise stated in this PURCHASE ORDER, upon submission of proper

© 2009 Bechtel National, Inc., All Rights Reserved

**Part 4 – General Conditions**

*Bechtel National, Inc.*
*Hanford Tank Waste Treatment and Immobilization Plant (WTP)*

Purchase Order No.: ***24590-QL-POA-JA03-00006***
Rev.: ***0***

invoices, the prices stipulated herein for PRODUCT(S) delivered and accepted; however, payment may be withheld or portions thereof may be deducted if in BUYER'S reasonable opinion SELLER is not performing in accordance with the provisions of this PURCHASE ORDER or if proper set-offs in favor of BUYER in other transactions are asserted. BUYER reserves the right to make payments due hereunder directly to suppliers of SELLER whenever BUYER has reason to believe SELLER has not paid or is likely not to pay such suppliers amounts due them on a timely basis.

(b) BUYER may, as a condition precedent to any payment, require SELLER to submit for itself, its subcontractors, immediate and remote, and all material suppliers, vendors, laborers and other parties acting through or under it, complete waivers and releases of all claims against BUYER or OWNER arising under or by virtue of this PURCHASE ORDER. The waivers and releases are Attachment B, *Partial Release and Certificate of Payment* form and Attachment C, *Release and Certificate of Final Payment* form. In addition, and upon BUYER'S request, SELLER shall furnish acceptable evidence that all such claims have been satisfied.

(c) Payment terms are net sixty (60) days from the later of receipt and acceptance of the PRODUCT(S), including required submittals, or BUYER'S receipt of a proper invoice, subject to any limitations as provided elsewhere in this PURCHASE ORDER.

(d) If PURCHASE ORDER fulfillment is by a single shipment, invoices shall be submitted to BUYER at the time of shipment and any cash discount period offered by SELLER shall be computed from the later date of PRODUCT(S) and submittals receipt or BUYER'S receipt of a proper invoice. The foregoing payment and cash discount periods shall be extended by the period of any delay caused by an error in the invoice requiring correction.

(e) If PURCHASE ORDER fulfillment occurs by more than one shipment, SELLER shall submit only one invoice per month, after shipment is made. BUYER requests receipt of monthly invoices between the second and seventh calendar day of each month. Any cash discount period offered by SELLER shall be computed from the date of BUYER'S receipt of a proper invoice.

(f) BUYER may elect to pay SELLER through BUYER'S electronic funds transfer (EFT) process. SELLER shall advise BUYER in writing within thirty (30) days prior to due date of first invoice of the bank and account number to which EFT payments may be made to SELLER.

## GC-8 EXCUSABLE DELAYS

(a) Except for defaults of SELLER's suppliers or subcontractors at any tier, SELLER shall not be in default because of any failure to perform this Purchase Order under its terms if the failure arises from unforeseeable causes beyond the control and without the fault or negligence of the SELLER. Examples of these causes are

(1) acts of God or of the public enemy,
(2) acts of the Government in either its sovereign or contractual capacity,
(3) fires,
(4) floods,
(5) epidemics,
(6) quarantine restrictions,
(7) strikes,
(8) freight embargoes, and
(9) unusually severe weather.

In each instance, the failure to perform must be unforeseeable and beyond the control and without the fault or negligence of the SELLER. "Default" includes failure to make progress in the work so as to endanger performance.

© 2009 Bechtel National, Inc., All Rights Reserved
KA04a Part 4 – General Conditions (Commercial)
24590-AF00379 (Rev 8 09/19/13)

Part 4 – Page 5 of 33
PURCHASE ORDER NO: 24590-QL-POA-JA03-00006
Rev. 0

(b) If the failure to perform is caused by the failure of a lower tier subcontractor or supplier at any tier to perform or make progress, and if the cause of the failure was unforeseeable and beyond the control of both SELLER and the subcontractor or supplier, and without the fault or negligence of either, SELLER shall not be deemed to be in default unless the subcontracted supplies or services were obtainable from other sources in sufficient time for the BUYER to meet the required delivery schedule.

(c) SELLER shall, within twenty-four (24) hours of the commencement of any such delay, give to BUYER written notice thereof and within seven (7) calendar days of commencement of the delay, a written description of the anticipated impact of the delay on performance of the Work. Within seven (7) calendar days after the termination of any excusable delay, SELLER shall provide a written notice to BUYER specifying the actual duration of the delay. Failure to give any of the above notices shall be sufficient ground for denial of an extension of time.

(d) If BUYER determines that the delay was unforeseeable, beyond the control and without the fault or negligence of SELLER, BUYER will determine the duration of the delay and will extend the time of performance of this Purchase Order. Such extension shall be the sole remedy for the delay.

**GC-9 TITLE AND RISK OF LOSS**

(a) Title to all PRODUCT(S) provided under this PURCHASE ORDER shall be vested in OWNER when the first of the following events occurs:

(1) The PRODUCT(S) or part thereof are first identifiable as being appropriated to the PURCHASE ORDER;

(2) When BUYER pays for the PRODUCT(S) or part thereof in accordance with the PURCHASE ORDER; or

(3) When the PRODUCT(S) or part thereof are delivered to BUYER.

(b) However such transfer of title in the PRODUCT(S) will be without prejudice of BUYER'S right to refuse the PRODUCT(S) in case of non-conformity with the requirements of the PURCHASE ORDER.

(c) Irrespective of transfer of title in the PRODUCT(S), SELLER shall remain responsible for and shall bear any and all risk of loss or damage to the PRODUCT(S) during transit from SELLER's facilities and until arrival at the destination specified by BUYER, regardless of whether such transit was arranged by SELLER or BUYER.

(d) SELLER grants BUYER a security interest in the PRODUCT(S), and any special tooling and special test equipment as defined in FAR 45.101, Definitions, together with all raw materials, components, and inventory identified thereto ("Collateral"), whether now owned or hereafter acquired, and PRODUCT(S) and proceeds thereof as security for any and all advances or progress payments now or hereafter made under or in connection with this PURCHASE ORDER. SELLER further agrees:

(1) to execute such financing statements or other related documents evidencing such security interest as BUYER may request from time to time for the purpose of perfecting or continuing such security interest in the Collateral;

(2) to allow BUYER to unilaterally file unexecuted financing statements or other related documents to the extent legally permitted without notice to SELLER; and

© 2009 Bechtel National, Inc., All Rights Reserved

**Part 4 – General Conditions**

*Bechtel National, Inc.*
*Hanford Tank Waste Treatment and Immobilization Plant (WTP)*
Purchase Order No.: ***24590-QL-POA-JA03-00006***
Rev.: ***0***

(3) to provide to BUYER such information as is necessary for filing financing statements or related documents.

(e) SELLER agrees that it will, and that it will permit BUYER'S representatives to, appropriately mark and/or segregate the Collateral so as to indicate BUYER'S and OWNER'S interest therein. SELLER further agrees that it will not sell, assign, or otherwise dispose of any of the Collateral and that it will not create, suffer, or permit to attach or exist any lien or encumbrance thereon, except for the interest granted BUYER hereunder. SELLER further agrees that BUYER'S right to a security interest is in addition to and not in lieu of any other rights of BUYER or OWNER to the Collateral under this PURCHASE ORDER or at law.

SELLER shall insert the substance of this clause, including this subclause, in all its purchase orders and subcontracts pursuant to which advances or progress payments are to be made.

**GC-10 EXPEDITING**

The PRODUCT(S), including all warranty work, shall be subject to expediting by BUYER. BUYER'S representatives shall be afforded free access during working hours to SELLER'S facilities, and SELLER agrees to procure a similar right for BUYER, for expediting purposes with respect to SELLER'S lower-tier suppliers. As required by BUYER, SELLER shall supply schedules, progress reports and unpriced copies of SELLER'S purchase orders and subcontracts for BUYER'S use in expediting. SELLER shall notify BUYER in writing of any actual or anticipated delays immediately upon discovery. Such notice shall include an estimated period of delay, cause, and corrective actions being taken. Slippage in SELLER'S schedule may be deemed to be reasonable grounds for insecurity in which event BUYER may demand in writing that SELLER provide adequate assurances that SELLER will perform on time.

**GC-11 QUALITY STANDARDS**

(a) SELLER shall ensure that the PRODUCT(S) comply with the standards of quality specified by this PURCHASE ORDER or those customary in the industry if no requirement is specified. BUYER'S and OWNER'S quality surveillance representatives shall be afforded free access during working hours to plants of SELLER and SELLER agrees to procure a similar right for BUYER and OWNER for quality surveillance purposes with respect to SELLER'S lower-tier suppliers in order to monitor compliance with quality requirements. BUYER'S and OWNER'S right to inspect, examine, and test the PRODUCT(S) shall extend through the manufacturing process, the time of shipment and a reasonable time after arrival at the final destination. SELLER'S failure to adhere to the standards of quality required under this PURCHASE ORDER shall be deemed to be reasonable grounds for insecurity. BUYER may demand in writing, that SELLER provide adequate assurances of SELLER'S ability to meet said standards.

(b) The PRODUCT(S) shall not be deemed accepted until finally inspected and accepted by BUYER'S representative at final destination. The making or failure to make an inspection, examination or test of, or payment for, or acceptance of the PRODUCT(S) shall in no way relieve the SELLER from its obligation to conform to all of the requirements of this PURCHASE ORDER and shall in no way impair BUYER'S right to reject or revoke acceptance of nonconforming PRODUCT(S), or to avail itself of any other remedies to which BUYER may be entitled, notwithstanding BUYER'S knowledge of the nonconformity, its substantiality or the ease of its discovery.

© 2009 Bechtel National, Inc., All Rights Reserved
KA04a Part 4 – General Conditions (Commercial)
24590-AF00379 (Rev 8 09/19/13)
Part 4 – Page 7 of 33
PURCHASE ORDER NO: 24590-QL-POA-JA03-00006
Rev. 0

**Part 4 – General Conditions**

*Bechtel National, Inc.*
*Hanford Tank Waste Treatment and Immobilization Plant (WTP)*

Purchase Order No.: ***24590-QL-POA-JA03-00006***
Rev.: ***0***

**GC-12 RECORDS AND AUDIT**

(a) SELLER shall maintain records and accounts in connection with the performance of this PURCHASE ORDER which will accurately document incurred costs, both direct and indirect, for a period of three (3) years from final payment unless otherwise specified by applicable law. BUYER, OWNER or their representatives shall have the right to examine and copy, at all reasonable times and with advance notification, such records and accounts for the purpose of verifying payments or requests for payment when costs are the basis of such payment or to evaluate the reasonableness of proposed PURCHASE ORDER price adjustments and claims.

(b) If BUYER or OWNER establishes uniform codes of accounts for the Project, SELLER shall use such codes in identifying its records and accounts.

(c) For PURCHASE ORDERS in excess of $100,000, FAR clause 52.215-2, Audit and Records – Negotiation (JUN 1999) shall also apply. Where costs incurred are a factor in determining the amount payable to SELLER, paragraphs (a) through (g) and paragraph (i) of DEAR clause 970.5204-9, Accounts, Records, and Inspection (MAY 2000) shall also apply.

**GC-13 WARRANTIES AND GUARANTEES**

(a) SELLER warrants that the PRODUCT(S) shall be free from liens and from defects in design, material, workmanship, and title, and shall conform in all respects to the terms of this PURCHASE ORDER and to the applicable drawings**,** specifications and/or data sheets issued for manufacture, and shall be new and of the best quality, if no quality is specified. Unless the warranty period is otherwise specified in this PURCHASE ORDER, the warranty period shall apply at any time prior to eighteen (18) months from the date of delivery, or any time prior to twelve (12) months from the date the PRODUCT(S) are first placed into service, whichever occurs first, or, with respect to liens, title or latent defects at any time.

(b) If, during the warranty period, it appears that the PRODUCT(S), or any part thereof, do not conform to these warranties, and BUYER so notifies SELLER within the warranty period, SELLER shall promptly correct such nonconformity to the satisfaction of the BUYER, at SELLER'S sole expense; failing which BUYER may reject or revoke acceptance, and cover by making any reasonable purchase of PRODUCT(S) in substitution for those rejected and the SELLER will be liable to the BUYER for any additional costs for such substituted PRODUCT(S); or BUYER may proceed to correct SELLER'S nonconforming work by the most expeditious means available, and the costs for such correction shall be for SELLER'S account; or BUYER may retain the nonconforming PRODUCT(S) and an equitable adjustment reducing the order price to reflect the diminished value of such nonconforming PRODUCT(S) will be made by written revision.

(c) Further, and notwithstanding the above language, because of specific nuclear quality requirements imposed on the WTP Project, it may be necessary for BUYER to have deficient work of SELLER corrected by BUYER or other contractors. Therefore, SELLER agrees that BUYER, in its sole discretion, shall determine whether to allow the SELLER to self-correct any deficiency on the WTP work site or whether to have the work performed by others pursuant to the General Condition titled, "BACKCHARGES."

(d) SELLER'S liability hereunder shall extend to all damages proximately caused by the breach of any of the foregoing warranties, including incidental damages, such as disassembly, removal, inspection, re-installation, re-testing, costs of transportation or warehousing. SELLER shall not be liable for consequential damages such as loss of profit, loss of use or production, and costs of capital.

(e) BUYER and OWNER shall have the right to enforce SELLER'S warranty obligations set forth in this clause.

© 2009 Bechtel National, Inc., All Rights Reserved
KA04a Part 4 – General Conditions (Commercial)
24590-AF00379 (Rev 8 09/19/13)

Part 4 – Page 8 of 33
PURCHASE ORDER NO: 24590-QL-POA-JA03-00006
Rev. 0

**Part 4 – General Conditions**

*Bechtel National, Inc.*
*Hanford Tank Waste Treatment and Immobilization Plant (WTP)*

Purchase Order No.: ***24590-QL-POA-JA03-00006***
Rev.: ***0***

**GC-14 LAWS AND REGULATIONS**

SELLER acknowledges that all applicable laws and regulations will apply to the manufacture, sale and delivery of the PRODUCT(S). SELLER shall execute and deliver to BUYER any documents as may be required to effect or to evidence such acknowledgment. All laws and regulations required to be incorporated in agreements such as this one are hereby incorporated herein by reference. SELLER shall indemnify, defend and hold BUYER, OWNER and its respective affiliates harmless from and against any and all claims, legal actions, final judgments, reasonable attorneys' fees, fines and any other losses which any of them may incur as a result of the sale or delivery to BUYER hereunder of PRODUCT(S) which do not meet all requirements of such laws and regulations.

**GC-15 GOVERNMENT RESTRICTED PARTIES AND COMMODITIES**

(a) SELLER acknowledges that all applicable export rules and regulations of the origin countries shall apply to the exports of commodities, software, and technology (technical data and assistance) under this PURCHASE ORDER. SELLER also acknowledges that other rules and regulations may restrict the use of certain parties under this PURCHASE ORDER. Such rules and regulations are generally described below.

(1) Restricted Parties Lists

The U.S. Government, foreign governments and international organizations publish Restricted Parties Lists ("Lists") that identify parties (such as known or suspected terrorists, money launderers and drug traffickers) restricted from certain or all types of transactions. SELLER shall review all applicable Lists prior to initiating transactions with any third party for the performance of all or any portion of the work to ensure such third party is not identified on any applicable Lists. SELLER shall not enter into any transactions with any third party identified on any applicable Lists.

(2) U.S. Export Controlled Information

SELLER will comply with all U.S. export control laws and regulations. The information which BUYER may disclose to SELLER pursuant to the PURCHASE ORDER may be subject to the provisions of the Export Administration Act of 1979 and the U.S. Export Administration Regulations (15 C.F.R. 730-774) promulgated there under, the U.S. Department of Energy's export regulations (10 C.F.R. Part 810), the Arms Export Control Act, the International Traffic in Arms Regulations, and the sanctions and laws administered by the U.S. Treasury Department, Office of Foreign Assets Control (OFAC). SELLER acknowledges that these statutes and regulations impose restrictions on the import and export to foreign countries and foreign nationals of certain categories of items and data and that licenses from the U.S. Department of Energy, U.S. Department of Commerce, U.S. State Department and/or OFAC may be required before such items or data can be disclosed, and that such licenses may impose further restrictions on use of and further disclosure of such data.

(3) Licensing Requirements

(i) General: The United States of America and each foreign country have export regulations that control commodities, software and technology for various reasons, such as national security, foreign policy, anti-terrorism, and to avoid the proliferation of weapons and potential weapons, e.g. certain nuclear, chemical or biological agents. Numerous countries have export regulations that specifically address dual-use items, meaning commercial items with the potential to be applied to military and/or weapon proliferation uses. SELLER

© 2009 Bechtel National, Inc., All Rights Reserved
KA04a Part 4 – General Conditions (Commercial)
24590-AF00379 (Rev 8 09/19/13)

Part 4 – Page 9 of 33
PURCHASE ORDER NO: 24590-QL-POA-JA03-00006
Rev. 0

shall ensure that all necessary export licenses are timely obtained, or license exceptions confirmed in writing to BUYER, prior to the export of any commodity, software, or technology. SELLER shall provide to BUYER a copy of any export license obtained upon receipt by SELLER, and in any event prior to the export occurring.

(ii) United States of America (USA) Export Licensing Requirements: SELLER is solely responsible for obtaining any required USA export licenses for all commodities, software, and technology being supplied in the performance of the work, except for any commodity, software or technology supplied by BUYER. A copy of the export license, or SELLER'S rationale as to why a license is not required, shall be provided to BUYER in writing upon receipt of the export license or SELLER'S determination that a license is not required, and in any event prior to the export occurring.

(b) SELLER shall be responsible for any delay resulting from SELLER'S failure to comply fully and timely with any such rule or regulation described above.

(c) SELLER hereby agrees to indemnify, defend and hold BUYER, OWNER, each of their respective affiliates and the respective directors, officers, employees and representatives of each harmless from and against any and all claims, legal or regulatory actions, final judgments, reasonable attorneys' fees, civil fines and any other losses which any of them may incur as a result of SELLER'S failure to comply with its obligations under this clause.

**GC-16 USE OF TECHNICAL DATA**

Without limiting the intellectual property rights granted to BUYER or OWNER under other provisions in this PURCHASE ORDER, and notwithstanding any proprietary legends or copyright notices to the contrary which may be contained in, affixed to, or associated with any technical data provided to BUYER by SELLER in connection with SELLER'S fulfillment of its obligations under this Subcontract, SELLER grants BUYER the right to copy or reproduce any technical data furnished by SELLER in connection with this PURCHASE ORDER and distribute such copies or reproductions to bidders, contractors or subcontractors for use solely for the limited purposes of designing, constructing, operating, maintaining, licensing, or any other activity as may be deemed necessary to fulfill BUYER'S obligations under its prime contract. SELLER shall ensure that all of its contracts with lower-tier subcontractors, suppliers and third party licensors related to the performance of SELLER'S obligations under this purchase order include all provisions necessary to enable SELLER to fully comply with its obligations under this clause.

**GC-17 ASSIGNMENT**

Any assignment of this PURCHASE ORDER or of any rights hereunder in any manner, in whole or in part, by operation of law or otherwise, without the prior written consent of BUYER shall be void. Upon ten (10) days written notice to BUYER, SELLER may assign monies due or to become due under this PURCHASE ORDER, provided that any assignment of monies shall be subject to proper set-off in favor of BUYER and any deductions provided for in this PURCHASE ORDER. SELLER agrees that, upon BUYER'S request, this PURCHASE ORDER shall be assigned to OWNER or OWNER'S designee.

© 2009 Bechtel National, Inc., All Rights Reserved

## Part 4 – General Conditions

BECHTEL

*Bechtel National, Inc.* Purchase Order No.: ***24590-QL-POA-JA03-00006***
*Hanford Tank Waste Treatment and Immobilization Plant (WTP)* Rev.: ***0***

### GC-18 SUSPENSION

Notwithstanding any other provisions of this PURCHASE ORDER, BUYER may at any time, suspend, or extend the time for, SELLER'S performance, upon ten (10) days prior written notice of such suspension or extension. Thereafter, SELLER shall resume performance as directed by BUYER. In the event of such suspension or extension, SELLER shall be entitled to reimbursement for additional costs (excluding profit) reasonably and necessarily incurred by SELLER in effectuating such suspension or extension period, to the extent that such additional costs are actually incurred, if claimed within thirty (30) days after resumption of performance.

### GC-19 TERMINATION FOR CONVENIENCE

(a) SELLER'S performance under this PURCHASE ORDER may be terminated by the BUYER for its convenience in accordance with this clause in whole, or, from time to time in part whenever the BUYER shall elect. Any such termination shall be effected by delivery to SELLER of a notice of termination specifying the extent to which performance under the PURCHASE ORDER is terminated, and the date upon which such termination becomes effective. Upon receipt of any such notice, SELLER shall, unless the notice requires otherwise: (1) immediately discontinue work on the date and to the extent specified in the notice; (2) place no further orders for materials other than as may be necessarily required for completion of any portion of the work that is not terminated; (3) promptly make every reasonable effort to either obtain cancellation on terms satisfactory to BUYER of all orders to lower-tier suppliers or assign those orders to BUYER; and (4) assist BUYER upon request in the maintenance, protection, and disposition of property acquired by BUYER under this PURCHASE ORDER.

(b) If requested in writing, within thirty (30) days of receipt of termination, the BUYER will pay to SELLER as full compensation: (1) all amounts due and not previously paid to SELLER for PRODUCT(S) completed in accordance with this PURCHASE ORDER prior to such notice, and for work thereafter completed as specified in such notice; (2) a reasonable amount for any PRODUCT(S) then in production; provided that no such adjustment shall be made in favor of SELLER with respect to any PRODUCT(S) which are SELLER'S standard stock; (3) reasonable costs of settling and paying claims arising out of the canceled orders; and (4) a reasonable profit for costs incurred in the performance of the work terminated; provided, however, that if it appears that the SELLER would have sustained a loss on the entire PURCHASE ORDER had it been completed, no profit shall be included.

(c) The total sum to be paid to SELLER under this clause shall not exceed the total PURCHASE ORDER price as reduced by the amount of payments otherwise made and as further reduced by the PURCHASE ORDER price of work not terminated, and will not include any consideration for loss of anticipated profits on the terminated work, all claims for which SELLER agrees to waive.

### GC-20 TERMINATION FOR DEFAULT

(a) BUYER may terminate the whole or any part of SELLER'S performance under this PURCHASE ORDER in any one of the following circumstances: (1) if SELLER fails to make delivery of the PRODUCT(S) or to perform within the time specified herein or any extension thereof; (2) if SELLER delivers nonconforming PRODUCT(S); (3) if SELLER fails to provide adequate assurance of SELLER'S ability to meet the quality standards or the delivery date(s) of this PURCHASE ORDER; or (4) if SELLER fails to perform any of the other provisions of this PURCHASE ORDER in accordance with its terms or so fails to make progress as to endanger performance of this PURCHASE ORDER. In the event of any such failure, BUYER will provide SELLER with written notice of the nature of the failure and BUYER'S intention to terminate for default. In the event SELLER does not cure such failure within ten (10) days of such notice, BUYER may, by written notice, terminate this PURCHASE ORDER

© 2009 Bechtel National, Inc., All Rights Reserved
KA04a Part 4 – General Conditions (Commercial)
24590-AF00379 (Rev 8 09/19/13)
Part 4 – Page 11 of 33
PURCHASE ORDER NO: 24590-QL-POA-JA03-00006
Rev. 0

**Part 4 – General Conditions**

*Bechtel National, Inc.*
*Hanford Tank Waste Treatment and Immobilization Plant (WTP)*

Purchase Order No.: ***24590-QL-POA-JA03-00006***
Rev.: ***0***

(b) In the event BUYER terminates this PURCHASE ORDER in whole or in part as provided in this clause, BUYER may procure, upon such terms and in such manner as BUYER may deem appropriate, PRODUCT(S) similar to those so terminated and SELLER shall be liable to BUYER for any additional costs for such similar PRODUCT(S); provided, that SELLER shall continue the performance of this PURCHASE ORDER to the extent not terminated under the provisions of this clause.

(c) SELLER agrees to assist BUYER in the event that re-procurement action is necessary as a result of default, by cooperation in the transfer of information, in the disposition of work in progress or residual material, and in the performance of other reasonable requests made by BUYER.

(d) If, after notice of termination of this PURCHASE ORDER, it is determined for any reason that SELLER was not in default under the provisions of this clause, or that the default was excusable under the provisions of this PURCHASE ORDER, the rights and obligations of the parties shall be the same as if the notice of termination had been issued pursuant to the Termination for Convenience clause.

**GC-21 NON-WAIVER**

(a) Failure by BUYER to insist upon strict performance of any of the terms and conditions hereof, or failure or delay in exercising any rights or remedies provided herein or by law, or to properly notify SELLER in the event of breach, or the acceptance of or payment for any PRODUCT(S) hereunder, or review of design, shall not release SELLER from any of the warranties or obligations of this PURCHASE ORDER and shall not be deemed a waiver of any right of BUYER to insist upon strict performance hereof or a waiver of any of its rights or remedies as to any such PRODUCT(S) regardless when shipped, received or accepted, or as to any prior or subsequent default hereunder, nor shall any termination of this PURCHASE ORDER by BUYER operate as a waiver of any of the terms hereof. A requirement that a SELLER-furnished document is to be submitted for or subject to "Authorization to Proceed," "Approval," "Acceptance," "Review," "Comment," or any combinations of such words or words of like import shall mean, unless the PURCHASE ORDER clearly indicates otherwise, that the SELLER shall, before implementing the information in the document, submit the document, obtain resolution of any comments and BUYER'S authorization to proceed. Such review shall not mean that a complete check will be performed. Authorization to proceed shall not constitute acceptance or approval of design details, calculations, analyses, tests, or construction methods or materials developed or selected by SELLER and shall not relieve SELLER from full compliance with requirements of this PURCHASE ORDER.

(b) Those provisions of this PURCHASE ORDER that by their very nature survive payment, final acceptance, or termination under the PURCHASE ORDER shall remain in full force and effect after such acceptance and payment.

**GC-22 APPLICABLE LAW**

Irrespective of the place of performance, the provisions in this PURCHASE ORDER shall be construed and interpreted according to the federal common law of government contracts, as enunciated and applied by federal judicial bodies, boards of contracts appeals, and quasi-judicial agencies of the U.S. Federal Government. To the extent that the federal common law of government contracts is not dispositive, the laws of the State of Washington shall apply.

**GC-23 REPRESENTATIONS AND CERTIFICATIONS**

Representations and Certifications submitted in SELLER'S offer are hereby incorporated by reference.

© 2009 Bechtel National, Inc., All Rights Reserved
KA04a Part 4 – General Conditions (Commercial)
24590-AF00379 (Rev 8 09/19/13)

Part 4 – Page 12 of 33
PURCHASE ORDER NO: 24590-QL-POA-JA03-00006
Rev. 0

## GC-24 DISPUTES

(a) All disputes arising under or relating to this PURCHASE ORDER which cannot be resolved by negotiation shall be resolved under this clause.

(b) "Claim," as used in this clause, means a written demand or written assertion by either BUYER or SELLER (the "Parties") seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of PURCHASE ORDER terms, or other relief whether in contract or in tort, arising under or relating to this PURCHASE ORDER. A voucher, invoice, other routine request for payment or request for equitable adjustment under a remedy granting clause that is not in dispute when submitted is not a claim under this clause. The submission may be converted to a Claim, by complying with the submission and certification requirements of this clause, if it is disputed either as to liability or amount or is not acted upon in a reasonable time.

(c) If for any reason SELLER and BUYER are unable to negotiate a resolution of a Claim, SELLER or BUYER shall notify the other Party in writing that a dispute exists and request or provide a final determination by BUYER. Any such request by SELLER shall be clearly identified by reference to this clause and shall summarize the facts in dispute and SELLER'S proposal for resolution. With respect to Claims for equitable adjustment under any remedy granting clause under this PURCHASE ORDER, SELLER shall be deemed to have waived such Claim unless SELLER has requested resolution of the Claim under this clause within one year of the date that such Claim first arises or the Final Acceptance of the work under this PURCHASE ORDER, whichever occurs earlier.

(d) As a condition precedent to further consideration of any Claim by SELLER where the amount requested by SELLER exceeds $100,000 or the resolution of the Claim could result in payment by BUYER in excess of $100,000, SELLER shall provide the following certification:

> "I certify that the claim is made in good faith; that the supporting data are accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the Purchase Order adjustment for which Seller believes Buyer or U.S. Government is liable; and that I am duly authorized to certify the claim on behalf of Seller."

The foregoing certification may be executed by any person duly authorized by SELLER'S governing documents to bind SELLER with respect to the Claim. At the request of BUYER, SELLER agrees to provide evidence of such authorization.

(e) BUYER will, within forty-five (45) calendar days of any request by SELLER, either (1) provide a written final determination setting forth the contractual basis for its decision and defining what PURCHASE ORDER adjustments it considers equitable; or (2) notify SELLER of the date by which the decision will be made. Upon SELLER'S written acceptance of BUYER'S determination the PURCHASE ORDER will be modified in accordance with the General Condition titled "CHANGES," and the determination implemented accordingly or, failing agreement, BUYER may in its sole discretion pay such amounts and/or revise the time for performance of the work in accordance with BUYER'S final determination.

(f) If a Claim by SELLER is based on alleged actions, inactions or omissions of OWNER and the interests of justice would be served by resolving SELLER'S Claim in a single proceeding, BUYER may, in its sole discretion, elect to sponsor SELLER'S Claim under the Disputes clause of BUYER'S Prime Contract and allow SELLER to proceed in BUYER'S name. In the event that BUYER so sponsors a Claim, SELLER

© 2009 Bechtel National, Inc., All Rights Reserved

**Part 4 – General Conditions**

*Bechtel National, Inc.*
*Hanford Tank Waste Treatment and Immobilization Plant (WTP)*

Purchase Order No.: ***24590-QL-POA-JA03-00006***
Rev.: ***0***

agrees to enter into a sponsorship agreement under which SELLER waives its right to reimbursement from BUYER except to the extent that OWNER is liable to BUYER; and SELLER shall indemnify BUYER for any costs and expenses associated with sponsorship of the Claim.

(g) If BUYER'S final determination is not accepted by SELLER the matter shall, within thirty (30) calendar days, be referred to senior executives of the Parties for resolution in accordance with the following procedures:

(1) The Parties' senior executives shall have designated authority to settle the dispute. Where appropriate for resolution, the Parties may prepare and exchange memoranda stating the issues in dispute and their respective positions, summarizing the negotiations that have taken place and attaching relevant documents. The senior executives may, in their discretion, meet for negotiations at a mutually agreed time and place as soon as is practicable after the exchange of memoranda.

(2) All communications, whether oral or written, related to the foregoing meeting shall be deemed to have been made as part of efforts to compromise the Claim and shall not be admissible as evidence in any subsequent proceedings.

(h) If the matter has not been resolved within sixty (60) calendar days of the commencement of the referral to senior executives, the Parties shall attempt to resolve the dispute in non-binding mediation in accordance with the Center for Public Resources Model Procedure for Mediation of Business Disputes. Each Party shall be responsible for its own expenses.

(i) If the matter has not been resolved within sixty (60) calendar days of the commencement of mediation, or if either BUYER or SELLER will not participate in mediation, either Party may pursue any legal remedy. The Parties agree that the only venue for the filing of any court proceeding with respect to any dispute under this PURCHASE ORDER shall be a United States District Court in the State of Washington. In the event that said Court does not accept jurisdiction of the litigation, the Parties agree that the venue shall be a Washington state court. Each party hereby waives its right to a jury trial in any judicial proceeding.

(j) SELLER shall proceed diligently with performance of this PURCHASE ORDER, pending final resolution of any request for relief, Claim, appeal, or action arising under the PURCHASE ORDER, and comply with any decision of BUYER.

(k) Absent agreement of BUYER and other than for a period not to exceed forty-five (45) days for final decision, thirty (30) days for senior management review, and sixty (60) days for mediation, these contractual remedies shall not be deemed to waive, act as a condition precedent to accrual or otherwise extend any statute of limitation applicable to any claim that would have lapsed but for the BUYER'S agreement to negotiate SELLER'S requests for equitable adjustments or Claims.

## GC-25 SELLER TERMS AND CONDITIONS EXCLUDED

The only terms and conditions that apply to this PURCHASE ORDER are the BUYER'S terms and conditions included herein or attached hereto. No terms and conditions of the SELLER included in an acknowledgement, price book incorporated herein, or any field ticket or invoice apply to this PURCHASE ORDER.

## GC-26 AUTHORIZED REPRESENTATIVES AND NOTICES

(a) Immediately following the award of this PURCHASE ORDER, SELLER shall designate in writing an authorized representative to represent and act for SELLER and shall specify any and all limitations of

© 2009 Bechtel National, Inc., All Rights Reserved
KA04a Part 4 – General Conditions (Commercial)
24590-AF00379 (Rev 8 09/19/13)

Part 4 – Page 14 of 33
PURCHASE ORDER NO: 24590-QL-POA-JA03-00006
Rev. 0

such representative's authority. All communications given to the authorized representative by BUYER in accordance with this PURCHASE ORDER shall be binding upon SELLER. BUYER shall designate, in writing, one or more representatives to represent and act for BUYER and to receive communications from SELLER. Notification of changes of authorized representatives for either BUYER or SELLER shall be provided in advance, in writing, to the other party.

(b) Any notice pursuant to the terms and conditions of this PURCHASE ORDER shall be in writing and (a) delivered personally, (b) sent by certified mail with return receipt requested, (c) sent by a recognized overnight post or courier service with delivery receipt requested, or (d) sent by facsimile transfer or email and acknowledged by recipient via a separate transmittal.

**GC-27 INSURANCE FOR GOODS IN TRANSIT**

(a) SELLER shall provide the following insurance coverage required to implement General Condition titled, "TITLE AND RISK OF LOSS."

(b) BUYER/OWNER-Furnished Insurance
Neither BUYER nor OWNER is insuring against loss or damage of PRODUCT from SELLER'S facilities in accordance with the Delivery Terms in Part 3 of this PURCHASE ORDER, until arrival at the destination designated by BUYER, unless otherwise specifically stated herein.

(c) SELLER Furnished Insurance
Unless otherwise specified in this PURCHASE ORDER, SELLER shall maintain in effect at all times, with insurers and under forms of policies satisfactory to BUYER, All Risk insurance coverage with limits not less than the replacement value of the PRODUCT(S) shipped. The coverage shall commence at SELLER'S facilities and terminate upon the PRODUCT'S arrival and acceptance at the destination specified by BUYER, regardless of whether such transit was arranged by SELLER, or by BUYER.

(d) BUYER shall be a Named Insured with a waiver of subrogation under such All Risk insuring terms, London Institute Cargo Clause A, modified as follows:

(1) Delete Exclusion 4.3 which provides no coverage for insufficiency or unsuitability of packing or preparation of the subject matter insured; and

(2) Delete Exclusion 4.6, which provides no coverage for insolvency or financial default of owners, managers, charterers or operators of ocean vessels, or of inland transportation modal owners, managers or operators.

(e) SELLER shall be responsible for any uninsured loss if such insuring terms, as specified above, have not been arranged.

(f) When transit is arranged by BUYER, SELLER hereby agrees, and shall require its insurer to agree, to waive subrogation against the transportation.

(g) Insurance Certificate
SELLER shall include copies of Insurance Certificates with the shipment documentation specified in Part 3 Attachment EXP and Part 3 Attachment TL of this PURCHASE ORDER. Certificates shall identify on their face the Project Name, and the applicable PURCHASE ORDER Number.

© 2009 Bechtel National, Inc., All Rights Reserved

## GC-28 KEY PERSONNEL

SELLER shall assign the below listed Key Personnel to this PURCHASE ORDER. The listed Key Personnel shall be assigned to the PURCHASE ORDER for the duration of the PURCHASE ORDER in the positions represented. Upon request, SELLER shall furnish substantiation of the required levels of education, training and experience of these personnel as represented by SELLER.

| Name | Title/Position |
|---|---|
| | Project Manager |
| | Site Superintendent |
| | Site ES&H Representative |
| | QA/QC Manager |
| | Project Scheduler |

SELLER'S Key Personnel must possess the following qualifications and experience:
<u>Other Key Personnel</u>

<u>Project Manager</u>

<u>Site Superintendent</u>

<u>Site ES&H Representative</u>

<u>QA/QC Manager</u>

<u>Project Scheduler</u>

The above Key Personnel are considered essential to the Work being performed under this PURCHASE ORDER.

Prior to (1) diverting Key Personnel to other positions or (2) substituting any of the specified Key Personnel or (3) proposing them as a Key person under another PURCHASE ORDER, SELLER shall notify BUYER in writing at least thirty (30) days in advance and shall submit justification (including proposed replacement with candidate resume) in sufficient detail to permit evaluation of the impact on the Work being performed under this PURCHASE ORDER.

In the event a replacement candidate proposed by SELLER does not meet the specific qualifications and experience stated above for the position, BUYER may, at its sole discretion, determine that the proposed candidate may be acceptable by way of other qualifications and/or experience, and shall in such circumstances, inform SELLER accordingly. BUYER is not under any obligation to exercise such discretion.

When BUYER finds that a correlation exists or appears to exist between a documented lack of SELLER performance and a lack of SELLER employee qualification performance, the SELLER agrees to immediately replace that individual with another employee with qualifications appropriate to the Work being performed.

BUYER may also require that SELLER remove from the job, at no additional cost to BUYER, employees who endanger persons or property, disruptive to the workforce, or whose continued employment under this PURCHASE ORDER is inconsistent with the requirements of the PURCHASE ORDER and/or interests of safety or security at the Hanford Site.

© 2009 Bechtel National, Inc., All Rights Reserved

Replacement of personnel shall be at SELLER'S expense and any delay occasioned by the replacement process shall not entitle SELLER to an adjustment in favor of SELLER.

**GC-29 AUTHORITY OF PERSONNEL**

(a) BUYER will designate a Procurement Representative to administer the PURCHASE ORDER terms and conditions and act as BUYER'S authorized representative. The Procurement Representative is the only individual authorized to direct SELLER to deviate from the express, written terms of the PURCHASE ORDER.

(b). The BUYER will designate a BUYER'S Technical Representative who will be responsible for the coordination of technical aspects of the performance of the PURCHASE ORDER. Should the SELLER and BUYER'S Technical Representative disagree over the technical requirements of the PURCHASE ORDER; such matters will be immediately referred to the Procurement Representative for resolution. The BUYER'S Technical Representative does not possess any authority, express or implied, to direct the SELLER to deviate from the terms and conditions of the PURCHASE ORDER.

**GC-30 SAFETY FOR BUYER AND OWNER REPRESENTATIVES**

(a) SELLER shall ensure the safety of BUYER and OWNER representatives while present at or in SELLER'S facilities and the facilities of SELLER'S lower-tier suppliers for any purpose in connection with the PRODUCT(S), or any part thereof, being furnished by SELLER under this PURCHASE ORDER. If, at any time, a BUYER and/or OWNER representative deems that the conditions at SELLER'S facilities or the facilities of SELLER'S lower-tier suppliers are unsafe and promptly notifies SELLER accordingly, BUYER'S and OWNER'S representative(s) shall be entitled to suspend their activities (including, but not limited to, any activities relating to expediting, quality surveillance and delivery) at such facilities until the unsafe conditions are resolved by SELLER to BUYER'S reasonable satisfaction.

(b) If any BUYER or OWNER activities are suspended under this clause, SELLER shall promptly reschedule any work required to be conducted in the presence of a BUYER and/or OWNER representative and SELLER shall be fully liable for any resulting delay(s). SELLER shall also be liable for all costs (including, but not limited to, costs for labor, transportation and lodging) incurred by BUYER due to any such suspension and subsequent resumption of BUYER and/or OWNER activities at SELLER'S facilities or the facilities of SELLER'S lower-tier suppliers under this PURCHASE ORDER.

**GC-31 LABOR DISPUTES**

Whenever SELLER has knowledge that any actual or potential labor dispute is materially delaying or threatens to materially delay its performance on the Project, SELLER shall promptly give written notice thereof, including all relevant information with respect thereto, to BUYER.

**GC-32 NONDISCLOSURE, PUBLICITY, AND ADVERTISING**

(a) Except as permitted by this General Condition, SELLER agrees not to divulge to third parties or use for any purpose any of the following ("Confidential Information") without the written consent of BUYER: (i) this PURCHASE ORDER or any of the information contained herein and (ii) any information obtained

© 2009 Bechtel National, Inc., All Rights Reserved

**Part 4 – General Conditions**

*Bechtel National, Inc.*
*Hanford Tank Waste Treatment and Immobilization Plant (WTP)*

Purchase Order No.: ***24590-QL-POA-JA03-00006***
Rev.: ***0***

from or through BUYER or CUSTOMER in connection with the performance of this Subcontract. Notwithstanding the foregoing, SELLER may disclose Confidential Information if:

1. The information is known to SELLER prior to obtaining the same from BUYER or OWNER;
2. The information is, at the time of disclosure by SELLER, then in the public domain through no breach of this General Condition by SELLER; or
3. The information is obtained by SELLER from a third party who did not receive same, directly or indirectly from BUYER or OWNER and who has no obligation of secrecy with respect thereto.
4. SELLER is required to do so by applicable law, provided that SELLER first informs BUYER of such requirement and the Confidential information proposed to be disclosed (unless SELLER is prohibited by law from doing so) and allows BUYER a reasonable period in which to object to such disclosure in any appropriate forum

(b) SELLER may disclose to its employees and its lower tier subcontractors and suppliers Confidential Information on a need to know basis and only to the extent necessary for such employees and lower tier subcontractors and suppliers to perform their respective scope of work related to this PURCHASE ORDER. SELLER shall ensure each such lower tier subcontractor or supplier is bound by the same disclosure and use restrictions contained in this General Condition. If required by BUYER, SELLER shall also require its employees, and require its lower tiers to require their employees, to execute a nondisclosure agreement prior to performing any Work. Notwithstanding any of the foregoing, SELLER shall at all times comply with all applicable law regarding the confidentiality of personally identifiable information or other information related to individuals.

(c ) Further, SELLER further agrees that it will not include in any promotional materials or advertising or otherwise make, or permit to be made, any announcement, publish any writings, photographs, or other material, or release to any member of the public, press, business entity, or any official body any information concerning this PURCHASE ORDER, the services performed hereunder, or information regarding BUYER and its affiliates learned in connection with this PURCHASE ORDER, without the prior written consent of BUYER, except to the extent that such information falls within one of the categories described in 1 through 4 above.

## GC-33 BACKCHARGES

(a) In the event the PRODUCT(S) are found to be defective as to workmanship or materials or not to be in conformance with this PURCHASE ORDER, SELLER shall promptly correct any deficiency when so directed. BUYER will take reasonable measures to discover such noncompliance as quickly as practical; however, failure to do so shall in no way relieve SELLER of its responsibility during the term of this PURCHASE ORDER and for the warranty period to promptly make such modifications as are required.

(b) If upon being notified by BUYER or OWNER of deficient work or PRODUCT(S), and having been directed to correct the deficient work or PRODUCT(S) by a specific date, SELLER states or by its actions or indicates its inability or unwillingness to comply, then BUYER or OWNER shall proceed to accomplish the corrective work by the most expeditious means available to it and backcharge SELLER for the cost of the required work.

(c) Further, and notwithstanding the above language, because of specific nuclear quality and safety requirements imposed on the WTP Project, it may be necessary for BUYER to have deficient work of

© 2009 Bechtel National, Inc., All Rights Reserved
KA04a Part 4 – General Conditions (Commercial)
24590-AF00379 (Rev 8 09/19/13)

Part 4 – Page 18 of 33
PURCHASE ORDER NO: 24590-QL-POA-JA03-00006
Rev. 0

SELLER re-performed by BUYER or BUYER'S subcontractors. Therefore, SELLER agrees that BUYER, in its sole discretion, shall determine whether to allow SELLER to self-correct any deficiency on the WTP Jobsite or whether to have the work performed by BUYER or BUYER'S subcontractors pursuant to this backcharge provision. BUYER shall provide SELLER with written notice in the event that BUYER elects to have the work performed by BUYER'S subcontractors pursuant to this subclause (c). SELLER shall not contract with any subcontractor to perform the corrective action on the WTP Jobsite. In the event BUYER allows SELLER to correct the deficiency off the WTP Jobsite, SELLER will be liable for all costs associated with the removal, transportation and reinstallation of the deficient item.

(d) The cost categories for which SELLER is liable hereunder are the same as those prescribed in the General Condition titled, "WARRANTIES AND GUARANTEES."

SELLER may also be backcharged for extraordinary activities, such as, but not limited to:

(1) Changes and/or lateness of engineering submittals by SELLER that cause redesign, rework, and/or changes to BUYER supplied materials.

(2) Additional shop expediting or inspection undertaken by BUYER but caused by SELLER'S poor or lack of performance in execution of any part of its obligations of this PURCHASE ORDER, will also be backcharged to SELLER in accordance the provisions of this condition.

(3) Demurrage charges and container detention charges accruing at port of entry through delay in dockside clearance which is attributable to SELLER'S inadequate or improper documentation.

(4) BUYER and BUYER'S subcontractors' cost of such backcharge work shall be computed as follows:

(i) Labor shall be charged at actual cost;

(ii) Material shall be charged at net delivered cost;

(iii) Equipment and tool rentals shall be charged at prevailing rates in the area;

(iv) Work performed by BUYER'S subcontractors will be charged at the subcontractor's cost as determined to be fair and reasonable by BUYER; and

(v) 60% shall be added to items (i), (ii), (iii) and (iv) for BUYER'S indirect costs, overhead, supervision, and administration.

(e) Before proceeding on such backcharge work and, if available, BUYER shall furnish SELLER with a written estimate of the cost of performing the work, and solicit SELLER'S signed authorization to proceed. Regardless of SELLER'S willingness to provide such written authorization, BUYER, when forced to proceed with the work, upon completion of the work will invoice SELLER for actual costs incurred, computed as shown above, or withhold such sum from funds still due SELLER.

(f) In the event BUYER or OWNER has to expend additional time performing expediting, inspection or engineering activities because SELLER states (or by its actions indicates) inability or unwillingness to complete the work in accordance with the terms of this PURCHASE ORDER, BUYER or OWNER shall proceed to perform additional expediting, inspection or engineering to facilitate completion. This action will be taken using BUYER'S or OWNER'S personnel or agents and BUYER will backcharge SELLER for the cost of the work at a rate of US 150 Dollars ($150) per hour plus actual and reasonable expenses.

© 2009 Bechtel National, Inc., All Rights Reserved

**Part 4 – General Conditions**

*Bechtel National, Inc.* Purchase Order No.: ***24590-QL-POA-JA03-00006***
*Hanford Tank Waste Treatment and Immobilization Plant (WTP)* Rev.: ***0***

**GC-34 RELEASE AGAINST LIENS AND CLAIMS**

(a) SELLER shall promptly pay all claims of persons or firms furnishing labor, equipment, or materials used in providing the PRODUCT(S). BUYER may require SELLER to submit satisfactory evidence of payment and releases of all such claims. If there is any indication of any such unpaid claim, BUYER may withhold payment until SELLER has furnished such evidence of payment and release and SELLER shall indemnify and defend BUYER against any liability or loss arising from any such claim.

(b) In order to assure BUYER and OWNER of the prompt and unrestricted use of the Project for which the PRODUCT(S) under this PURCHASE ORDER are procured to the extent permitted by law, SELLER waives any and all liens, which it might otherwise assert in the resolution of disputes arising out of the performance of this PURCHASE ORDER. This waiver is not intended to be, nor will it be construed to be, a limitation of any of SELLER'S other rights under this PURCHASE ORDER or its other legal remedies. SELLER further agrees to incorporate the substance of this provision into all of its purchase orders with lower-tier suppliers.

**GC-35 HAZARDOUS AND TOXIC SUBSTANCES DISCLOSURE REQUIREMENTS**

In the performance of this PURCHASE ORDER, SELLER shall comply with all applicable laws, rules, requirements, and ordinances including, but not limited to, those relating to environmental law, toxic or hazardous materials, occupational health and safety. If this PURCHASE ORDER calls for the transfer to BUYER and/or OWNER by SELLER of any chemical substance or mixture, or any material which may generate or release a chemical substance or any hazardous agent, SELLER shall provide before or with said transfer a Material Safety Data Sheet (Federal OSHA Hazard Communication Standard, 29 CFR 1910.1200) and label which are current, accurate and complete, which include but are not limited to a statement of PRODUCT hazards and precautions for safe use. Copies of the Material Safety Data Sheet shall include the PURCHASE ORDER number, shipping location, and shall be sent to the shipping location identified in this PURCHASE ORDER.
RESTRICTED MATERIALS

The *Restricted Materials List,* 24590-WTP-LIST-CON-08-0001, (Attachment A) lists chemicals / materials which are restricted from being brought onto the WTP project. Procurement of these chemicals / materials, as well as products containing these restricted substances, requires specific authorization from the BUYER (WTP Safety Assurance).

**GC-36 BUY AMERICAN ACT—CONSTRUCTION MATERIALS UNDER TRADE AGREEMENTS**

(a) Any "Construction material" provided under this PURCHASE ORDER is subject to FAR 52.225-11 Buy American Act—Construction Materials under Trade Agreements (SEP 2010)

(b) Definitions. "Commercially available off-the-shelf (COTS) item," "Construction material," "WTO GPA country construction material," "FTA country construction material," "least developed country construction material," and "Caribbean Basin country construction material" as used in this provision, are defined in FAR 52.225-11 (SEP 2010).

(1) "Domestic construction materials" means:

(A) An unmanufactured construction material mined or produced in the United States; or

(B) A construction material manufactured in the United States, if—

© 2009 Bechtel National, Inc., All Rights Reserved
KA04a Part 4 – General Conditions (Commercial)
24590-AF00379 (Rev 8 09/19/13)
Part 4 – Page 20 of 33
PURCHASE ORDER NO: 24590-QL-POA-JA03-00006
Rev. 0

(i) The cost of its components mined, produced, or manufactured in the United States exceeds 50 percent of the cost of all its components; or

(ii) The construction material is a COTS item.

(2) "Designated country construction material" means a construction material that is a WTO GPA country construction material, an FTA country construction material, a least developed country construction material, or a Caribbean Basin country construction material.

(3) "Foreign construction material" means a construction material that is neither a domestic construction material nor a designated country construction material.

(c) Construction materials. The SELLER shall only deliver and use domestic or designated country construction materials in performing this PURCHASE ORDER. Delivery to the jobsite or use of foreign construction materials is expressly prohibited. If the SELLER is supplying a bundle or group of construction materials, each individual construction material (i.e. each article, material or supply provided in the bundle or group) must be in compliance with the requirements of this clause.

(1) Domestic construction materials component test. To determine whether a construction material contains more than fifty percent (50%) of the total cost of all components in each construction material item is from domestic components,

(A) the SELLER shall exclude any costs associated with the fabrication and manufacturing processes; and

(B) components incorporated into the construction material from designated country sources are NOT considered domestic components for purposes of the calculation.

(2) Designated country construction materials substantial transformation test. For all construction materials not mined, produced or manufactured in the United States, the country of origin is the country in which the construction material last underwent a substantial transformation into a new and different construction material distinct from the materials from which it was transformed. To qualify as a designated country construction material, the construction material must have undergone a substantial transformation in a Designated country (i.e. either a WTO GPA country, an FTA country, a least developed country, or a Caribbean Basin country as defined under FAR 52.225-11 (SEP 2010)). If the construction material underwent multiple substantial transformations then the last country in which the construction material underwent a substantial transformation is the country of origin.

(d) SELLER agrees to complete and submit to CONTRACTOR the provided Buy American Act and Trade Agreements Act – Material Conformance Statement form, Attachment D, prior to shipment of any construction materials to the WTP jobsite. If this PURCHASE ORDER will require multiple shipments throughout the period of performance, SELLER must complete and submit the Buy American Act and Trade Agreements Act – Material Conformance Statement form prior to each individual shipment.

(e) SELLER is solely responsible for compliance with this clause and agrees to indemnify and hold harmless CONTRACTOR from any and all direct, indirect or consequential expenses or other damages relating to or arising out of the failure of SELLER or its suppliers of any tier to comply with this clause.

© 2009 Bechtel National, Inc., All Rights Reserved

**Part 4 – General Conditions**

*Bechtel National, Inc.*
*Hanford Tank Waste Treatment and Immobilization Plant (WTP)*

Purchase Order No.: ***24590-QL-POA-JA03-00006***
Rev.: ***0***

(f) SELLER shall include the substance of this clause including this paragraph (f) in any PURCHASE ORDER or at any tier which SELLER awards under this PURCHASE ORDER.

**GC-37 QUALITY ASSURANCE PROGRAM (QAP)**

SELLER shall submit a Quality Assurance Manual for review and approval by BUYER, in accordance with Part 2 - Technical Specifications and Part 3 - Commercial Requirements.

**GC-38 NUCLEAR SAFETY AND INDEMNITY**

(a) The provisions of 48 CFR 952.250-70, *Nuclear Hazards Indemnity Agreement*, are incorporated by reference into this PURCHASE ORDER for the delivery of any PRODUCT(S) or service, which has nuclear safety implications. SELLER shall flow down this provision to all subcontractors and suppliers unless expressly waived in writing by BUYER. DOE will indemnify SELLER against (i) claims for public liability, and (ii) legal costs arising from any nuclear incidents under the provisions of 48 CFR 952.250-70.

(b) The item(s) required by this PURCHASE ORDER are related to nuclear or radiological safety and are therefore, in accordance with the Price-Anderson Amendments Act (PAAA) of 1988, Public Law 100-408, regulated under the following federal rules:

(1) 10 CFR Part 708, DOE Contractor Employee Protection;

(2) 10 CFR Part 820, Procedural Rules for DOE Nuclear Activities;

(3) 10 CFR Part 830, Nuclear Safety Management; Subpart A, Quality Assurance Requirements; and

(4) 10 CFR Part 835, Occupational Radiation Protection.

These rules govern the conduct of persons involved in DOE nuclear activities.

(c) Failure by SELLER to comply with all requirements of this PURCHASE ORDER or the SELLER'S QAP or failure to provide factual information regarding the quality of the items provided may be considered as a violation of the applicable nuclear safety management rules. These violations will provide a basis for the assessment of civil penalties and/or criminal prosecution, pursuant to 10 CFR 820.

(d) SELLER shall notify BUYER immediately (within twenty-four (24) hours of completion of the report) of any SELLER QAP deficiency that represents a noncompliance to any SELLER QAP commitment, expectation, or requirement. A QAP deficiency is defined as any deficiency reported by, or through, the SELLER'S corrective action system as required by the SELLER'S QAP.

(e) Notification is limited to SELLER QAP deficiencies that affect, or may affect, items required by the PURCHASE ORDER, whether delivered or undelivered to BUYER. Notification shall be considered accomplished upon formal transmittal of SELLER'S deficiency report to BUYER'S designated representative. For the purpose of this reporting requirement, deficiency reports shall be transmitted to:

Bechtel National, Inc.
2435 Stevens Center Place
Richland, WA 99354
Attention: PAAA Coordinator Manager

© 2009 Bechtel National, Inc., All Rights Reserved
KA04a Part 4 – General Conditions (Commercial)
24590-AF00379 (Rev 8 09/19/13)

Part 4 – Page 22 of 33
PURCHASE ORDER NO: 24590-QL-POA-JA03-00006
Rev. 0

(f) Failure to provide BUYER with timely notification (within twenty-four (24) hours of completion of the report) of SELLER QAP deficiencies as defined herein shall constitute a breach of the PURCHASE ORDER requirements and increases the risk of civil penalty assessment and/or criminal prosecution.

(g) SELLER shall certify conformance of all items and related documentation required under this PURCHASE ORDER utilizing BUYER'S G-321-V form, Quality Verification Document Requirements. SELLER'S certification represents that all items and required documentation conform in all respects to the stated PURCHASE ORDER requirements or BUYER authorized deviations. Furthermore, SELLER'S certification represents that all information provided is accurate, complete, and true pursuant to 10 CFR 820.11, Procedural Rules for DOE Nuclear Activities, Subpart A, Information Requirements, which states in part:

(1) Any information pertaining to a nuclear activity provided to DOE by any person or maintained by any person for inspection by DOE shall be complete and accurate in all material respects.

(2) No person involved in a DOE nuclear activity shall conceal or destroy any information concerning a violation of a DOE Nuclear Safety Requirement, a Nuclear Statute, or the Act.

(h) The SELLER shall indemnify BUYER for any civil penalties pursuant to Section 234A of the Atomic Energy Act of 1954 as amended, levied against BUYER, for any violations of applicable DOE rules, regulations, or orders committed by SELLER or its lower-tier suppliers.

**GC-39 LANGUAGE REQUIREMENTS**

All documents and all notices, communications and submittals between the parties pursuant to the implementation of this PURCHASE ORDER shall be in the English language, unless otherwise directed by BUYER. All translation services, to include the physical presence of qualified translators, necessary for written or oral communications shall be provided by SELLER.

**GC-40 SYSTEM OF WEIGHTS AND MEASUREMENTS**

SELLER shall utilize the U. S., Imperial or English System as the system of measurement for all designs, specifications, drawings, plans and work except as otherwise directed in writing by BUYER. If SELLER wishes to show the SI System of Measurement in addition to the U. S., Imperial or English System, it shall be shown at SELLER'S convenience and at no additional cost to BUYER.

**GC-41 BUYER FURNISHED EQUIPMENT (INCLUDING MATERIALS)**

(a) If BUYER or OWNER furnishes equipment to SELLER for SELLER'S use in performing the scope of work of this PURCHASE ORDER, or if BUYER or OWNER compensates SELLER for SELLER acquired equipment (including materials) listed in Part 1 of this PURCHASE ORDER, title of said equipment shall remain with BUYER or OWNER. SELLER shall have full responsibility for BUYER or OWNER owned equipment while at SELLER'S or SELLER'S lower-tier supplier facilities.

(1) SELLER shall acknowledge receipt of BUYER or OWNER owned equipment in good order.

(2) Title remains with BUYER or OWNER though the equipment is stored in SELLER'S facilities and said equipment will not be subject to any liens or bankruptcy proceedings.

© 2009 Bechtel National, Inc., All Rights Reserved



**Part 4 – General Conditions**

*Bechtel National, Inc.*
*Hanford Tank Waste Treatment and Immobilization Plant (WTP)*

Purchase Order No.: ***24590-QL-POA-JA03-00006***
Rev.: ***0***

(3) The equipment will be stored safely and properly in the SELLER'S facilities and have full value insurance coverage for fire, theft, and third party liability provided by the SELLER.

(4) SELLER shall indemnify BUYER and OWNER against any damages, injury, or death which may occur as a result of the BUYER or OWNER owned equipment being located in the SELLER'S facilities.

(b) BUYER furnished Government Owned Equipment/Materials furnished to SELLER under this PURCHASE ORDER are listed below, or on Attachment E:

**NONE**

(c) SELLER shall provide in writing a Property Management Plan for the control, protection, and preservation of BUYER furnished Government Owned Equipment/Materials (listed above) furnished to SELLER under this PURCHASE ORDER. The property program shall meet all the requirements established in FAR Part 45, *Government Property*, (October 10, 2000) and FAR 52.245-2, *Government Property (Fixed-Price Contracts)* (DEC 1989). The Property Management Plan must be signed and dated by an authorized SELLER Representative.

(d) The FAR and DEAR clauses are incorporated by reference herein and SELLER agrees that they shall have the same force and effect as if printed in full text.

(e) SELLER shall be responsible and accountable for all Government property provided under this PURCHASE ORDER and shall comply with the FAR and the DEAR, in effect on the date of PURCHASE ORDER award.

(f) SELLER'S Property Management Plan shall be approved by BUYER and any changes to SELLER'S BUYER-approved Property Management Plan shall be reviewed and approved by BUYER.

(g) SELLER shall maintain and implement its Property Management Plan for the identification, accountability, tracking, protection, maintenance, reporting, and control of Government Property.

(h) BUYER and OWNER and all their respective designees shall have access at all reasonable times to the premises in which any Government property is located for the purpose of inspecting the Government property.

(i) Upon completion of this PURCHASE ORDER or at such earlier dates as may be directed by BUYER, SELLER shall submit, in a form acceptable to BUYER, inventory schedules covering all Government Property. SELLER shall prepare the Government property for shipment as directed by BUYER.

(j) SELLER'S BUYER-approved Property Management Plan is hereby incorporated by reference.

## GC-42 SUSPECT/COUNTERFEIT ITEMS

(a) Items furnished under this PURCHASE ORDER are intended for use in a U. S. Government-owned facility. Items delivered under this PURCHASE ORDER may contain potentially suspect or counterfeit items or materials (i.e., fasteners, electrical components, mechanical devices, piping/piping system components, and/or raw-stock metals). SELLER and its lower-tier suppliers shall maintain sufficient control to prevent the procurement, installation, use, and delivery of materials and equipment that contain or exhibit suspect or counterfeit item characteristics or conditions.

BUYER'S Quality Assurance maintains an information listing of Suspect/Counterfeit Items (S/CI) considered applicable to the WTP Project. This information is available through WTP S/CI information

© 2009 Bechtel National, Inc., All Rights Reserved
KA04a Part 4 – General Conditions (Commercial)
24590-AF00379 (Rev 8 09/19/13)

Part 4 – Page 24 of 33
PURCHASE ORDER NO: 24590-QL-POA-JA03-00006
Rev. 0

webpage at http://www.hanfordvitplant.com/supplier_resources/suspect_counterfeit_items/.Information included on this web page is provided for information only and BUYER makes no representation or guarantee as to the accuracy or completeness of such information. SELLER is solely responsible for collecting, maintaining, disseminating, and using the most accurate, up to date information on S/CI and associated suppliers using all available sources with respect to the equipment and materials provided by SELLER.

(b) SELLER is solely responsible for all costs associated with the discovery, removal, replacement, and impoundment of materials and equipment that contain or exhibit suspect or counterfeit item characteristics or conditions.

(c) Unless otherwise specified, all materials and all material components and parts, associated with manufactured equipment, including that permanently installed into systems, subsystems, and/or assemblies, shall be genuine, new, and unused. Refurbished, rebuilt, or modified items are strictly prohibited unless specifically authorized in writing by BUYER.

(d) Materials and equipment delivered under this PURCHASE ORDER shall exhibit the manufacturer's original labels and identification.

(e) Materials, equipment, or assemblies that consist of, or contain high strength fasteners (e.g., grades 5, 8, 8.2, A325, and A490, internally/externally threaded and greater than 0.25" in diameter), shall exhibit both grade marks and the manufacturer's identification symbol (headmark), in accordance with the applicable specification (i.e., ASTM, SAE, etc.). Fasteners with headmarkings identified on the DOE Headmark List, are strictly prohibited. Materials, equipment, or assemblies consisting of, or containing high strength fasteners, which DO NOT exhibit both grade marks and the manufacturer's identification symbol constitute a nonconformance with the PURCHASE ORDER requirements.

(f) Materials, equipment, or assemblies that consist of, or contain electrical components shall exhibit as applicable, legible amperage and voltage ratings, operating parameters, and the product manufacturer's labels and identification. Electrical components shall exhibit as applicable to the item or component, Underwriters Laboratory (UL) labels or Factory Mutual (FM) labels, or labels as required by the ordering data or specifications.

(g) Materials, equipment, or assemblies that consist of, or contain mechanical, piping, and piping system components and/or parts, shall clearly exhibit all markings as required by the ordering data or specifications and/or the original manufacturer's labels or identification.

(h) Electronic components must be purchased, or provided, from the original component manufacturer, or from a distributor, reseller or aftermarket supplier who is franchised or authorized by the original manufacturer. See following for more detail http://www.aerospac.com/counterfeit.pdf.

(i) Detection by BUYER of any suspect or counterfeit condition leading to evidence of deliberate misrepresentation of any supplied item may result in an investigation into the validity of certification, fraud, and/or forgery, by the U. S. Government.

**GC-43 NUCLEAR SOURCE EQUIPMENT**

All SELLER equipment containing a nuclear source, such as but not limited to, nuclear densitometers, NDE equipment, sealed radioactive sources, etc., shall have BUYER'S Radiological Control Department's written authorization prior to mobilization of the equipment to the Jobsite. In order to obtain this approval, SELLER will

© 2009 Bechtel National, Inc., All Rights Reserved

**Part 4 – General Conditions**

BECHTEL

*Bechtel National, Inc.*
*Hanford Tank Waste Treatment and Immobilization Plant (WTP)*

Purchase Order No.: ***24590-QL-POA-JA03-00006***
Rev.: ***0***

be required to submit its valid Nuclear Regulatory Commission (NRC) and/or Agreement State License, operating and emergency procedures and evidence of operator training to BUYER. After the submitted documentation is reviewed, SELLER will make its equipment available for inspection to allow BUYER to verify compliance with SELLER'S license and procedures. All reviews and inspections must be completed prior to the initial mobilization. BUYER may conduct subsequent inspections as needed. After BUYER'S Radiological Control Department's initial approval is obtained, SELLER may handle, operate, and transport the nuclear source containing equipment within the requirements of its license without further involvement of BUYER'S Radiological Control Department.

**GC-44 INFRINGEMENT**

(a) SELLER shall, at its own expense, hold harmless and defend BUYER and OWNER under this PURCHASE ORDER against any claim, suit, or proceeding which is based upon a claim, whether rightful or otherwise, that any PRODUCT(S), or any part thereof, furnished by SELLER under this PURCHASE ORDER, constitutes an infringement of any patent, copyright, trademark, or trade secret, and SELLER shall pay all resulting damages and costs. In case said PRODUCT(S), or any part thereof, are, in such suit, held to constitute infringement and/or use is enjoined, the SELLER shall, at its own expense, subject to the following provisions, either procure for the BUYER and OWNER an irrevocable, royalty-free license to continue using such PRODUCT(S), or with BUYER'S prior written approval, replace same with substantially equal but non-infringing PRODUCT(S), or modify them so they become non-infringing, provided that no such replacement or modification shall in any way amend or relieve SELLER of its warranties and guarantees set forth in this PURCHASE ORDER.

(b) The preceding paragraph shall not apply to any PRODUCT(S), or any part thereof, manufactured to BUYER'S or OWNER'S detailed design. As to such PRODUCT(S) or part, the SELLER assumes no liability for infringement.

**GC-45 MODIFICATIONS TO GENERAL CONDITIONS**

The following modification(s) to the General Conditions apply to this PURCHASE ORDER:

Modify the corresponding General Condition Articles GC-7, GC-8 & GC-28 to the following:

GC-7 PRICE & PAYMENT

(c) Payment terms are net thirty (30) days from the later of receipt and acceptance of SELLER's invoice for milestones completed.

(e) If PURCHASE ORDER fulfillment occurs by more than one milestone, SELLER shall submit invoices in accordance with negotiated milestones. BUYER requests receipt of monthly invoices between the second and seventh calendar day of each month. Any cash discount period offered by SELLER shall be computed from the date of BUYER'S receipt of a proper invoice.

GC-8 EXCUSABLE DELAYS

(e) If BUYER determines that the delay was unforeseeable, beyond the control and without the fault or negligence of SELLER, BUYER will determine the duration of the delay and will extend the time of performance of this Purchase Order. (Last sentence removed)

© 2009 Bechtel National, Inc., All Rights Reserved
KA04a Part 4 – General Conditions (Commercial)
24590-AF00379 (Rev 8 09/19/13)

Part 4 – Page 26 of 33
PURCHASE ORDER NO: 24590-QL-POA-JA03-00006
Rev. 0

Part 4 – General Conditions

*Bechtel National, Inc.*
*Hanford Tank Waste Treatment and Immobilization Plant (WTP)*

Purchase Order No.: ***24590-QL-POA-JA03-00006***
Rev.: ***0***

GC-28 KEY PERSONELL

SELLER shall assign the below listed Key Personnel to this PURCHASE ORDER. Upon request, SELLER shall furnish substantiation of the required levels of education, training and experience of these personnel as represented by SELLER.

| Name | Title/Position |
|---|---|
| | Project Manager |
| | Technical Lead |

SELLER'S Key Personnel must possess the following qualifications and experience:
Other Key Personnel

Project Manager

Technical Lead

The above Key Personnel are considered essential to the Work being performed under this PURCHASE ORDER.

Prior to substituting any of the specified Key Personnel SELLER shall notify BUYER in writing at least thirty (30) days in advance and shall submit justification (including proposed replacement with candidate resume) in sufficient detail to permit evaluation of the impact on the Work being performed under this PURCHASE ORDER.

**GC-46 GOVERNMENT FLOWDOWNS**

(a) The following Federal Acquisition Regulation (FAR) and Department of Energy Acquisition Regulation (DEAR) clauses are incorporated by reference herein and SELLER specifically agrees that the referenced clauses shall have the same force and effect as if printed in their full text. Full text versions of the clauses may be accessed electronically at the following addresses:

- FAR clauses at: http://www.arnet.gov/far/
- DEAR clauses at: http://professionals.pr.doe.gov.

(b) Applicable full text clauses from the FAR, DEAR and the Prime Contract No. DE-AC27-01RV14136 are also included here. Whenever necessary to make the context of the FAR, DEAR, and Prime Contract clauses applicable to this PURCHASE ORDER the term "Contractor" shall mean "SELLER," the terms "Contract" and Subcontract shall mean this PURCHASE ORDER, and the terms "Government," "Contracting Officer" and equivalent phrases shall mean BUYER and/or BUYER'S representative, except the terms "Government" and "Contracting Officer: do not change:

(1) in the phrases "Government Property," Government-Furnished Property," and "Government-Owned Property;"

© 2009 Bechtel National, Inc., All Rights Reserved
KA04a Part 4 – General Conditions (Commercial)
24590-AF00379 (Rev 8 09/19/13)

Part 4 – Page 27 of 33
PURCHASE ORDER NO: 24590-QL-POA-JA03-00006
Rev. 0

(2) in any patent, data rights, or other intellectual property clauses incorporated herein, except that the term "Government" shall mean both "Government" and "BUYER" with respect to any Patent Indemnity clause;

(3) when a right, act, authorization or obligation can be granted or performed only by the Government or the prime contract Contracting Officer or his duly authorized representative;

(4) when title to property is to be transferred directly to the Government;

(5) when access to proprietary financial information or other proprietary data is required except for authorized audit rights; and

(6) where specifically modified herein.

(c) The general comments in the "instructions" section of the table below regarding applicability are provided for convenience only. SELLER is responsible for reviewing the text of each clause to determine its applicability to this PURCHASE ORDER.

| APPLICABLE TO ALL PURCHASE ORDERS | | |
|---|---|---|
| **FAR/DEAR Reference** | **Title** | **Instructions** |
| FAR 52.203-3 | Gratuities (APR 1984) | None. |
| FAR 52-222.1 | Notice to the Government of Labor Disputes (FEB 1997) | None. |
| FAR 52.222-3 | Convict Labor (AUG 1996) | None. |
| FAR 52.223-3 | Hazardous Material Identification and Material Safety Data (JAN 1997), – Alternate I (JUL 1995) | Subparagraph (b) is deemed modified to incorporate any materials identified in Seller's Reps and Certs. |
| FAR 52.225-11 | Buy American Act – Construction of Materials under Trade Agreements (SEP 2010) | None. |
| FAR 52.225-13 | Restrictions on Certain Foreign Purchases (JUN 2008) | None. |
| FAR 52.227-1 | Authorization and Consent (JUL 1995) | None. |
| FAR 52.227-3 | Patent Indemnity (APR 1984) | None. |
| FAR 52.242-13 | Bankruptcy (JUL 1995) | None. |
| FAR 52.244-6 | Subcontracts for Commercial items and Commercial Components (OCT 1998) | None. |
| FAR 52.245-2 | Government Property (Fixed-Price Contracts) (DEC 1989) | None. |
| DEAR 952.245-2 | Government Property (Fixed Price Contracts) | None. |
| FAR 52.247-63 | Preference for U.S. Flag Air Carriers (JAN 1997) | None. |
| FAR 52.247-64 | Preference for Privately Owned U.S. Flag -Commercial Vessels (JUN 2000) | None. |
| FAR 52.247-63 | Preference for U.S. Flag Air Carriers (JAN 1997) | None. |
| DEAR 952.208-70 | Printing (APR 1984) | None. |
| DEAR 952.223-71 | Integration of Environment, Safety, and Health into Work Planning and Execution (JUN 1997) | None. |

© 2009 Bechtel National, Inc., All Rights Reserved

# Part 4 – General Conditions

BECHTEL

*Bechtel National, Inc.*
*Hanford Tank Waste Treatment and Immobilization Plant (WTP)*
Purchase Order No.: ***24590-QL-POA-JA03-00006***
Rev.: ***0***

| APPLICABLE TO ALL PURCHASE ORDERS | | |
|---|---|---|
| **FAR/DEAR Reference** | **Title** | **Instructions** |
| DEAR 952.227-11 | Patent Rights-Retention by the Contractor (SHORT FORM) (FEB 1995) | Applies to all Purchase Orders that include experimental, developmental, demonstration, or research work, Test and evaluation studies; or design of novel structures, machines, products, materials, processes, or equipment (including construction equipment) with Small Business or Domestic Non-profit subcontractors (as defined in FAR 27.301). |
| DEAR 952.227-13 | Patent Rights-Acquisition by the Government (SEP 1997) | Applies to all Purchase Orders that include experimental, developmental, demonstration, or research work, Test and evaluation studies; or design of novel structures, machines, products, materials, processes, or equipment (including construction equipment) , except Purchase Orders with Small Business or Domestic Non-profit subcontractors (as defined in FAR 27.301). |
| DEAR 970.5204-9 | Accounts, Records, and Inspection (MAY 2000) | Applies when the Purchase Order terms stipulate that costs incurred are a factor in determining the amount payable to the Supplier. |
| DEAR 970.5204-78 | Laws, Regulations & DOE Directives (JUN 1997) | None. |
| DEAR 952.245-2 | Government Property (Fixed-Price Contracts) | None. |
| DEAR 952.250-70 | Nuclear Hazards Indemnity Agreement (JUN 1996) | None. |
| DEAR 970.5227-1 | Rights in Data Facilities (DEC 2000) | None. |
| DEAR 952.222-70 | Whistle Blower Protection for Contractor Employees (APR 1999) | This DEAR clause is comprised of DEAR clause 970.5204-70, Whistleblower Protection for Contractor Employees (APR 1999) as modified by DEAR clause 952.222-70, Whistleblower Protection for Contractor Employees (DEC 1993).<br>Applies if any work is performed at the WTP Jobsite by SELLER'S technical representatives |
| DEAR 970.5227-11 | Patent Rights-Management and Operating Contracts for Profit Contractor, Non-Technology Transfer (DEC 2000) | Applies to all purchase orders, except purchase orders with Small Business or Domestic Non-profit, wherein DEAR 952.227-11 shall apply |

© 2009 Bechtel National, Inc., All Rights Reserved
KA04a Part 4 – General Conditions (Commercial)
24590-AF00379 (Rev 8 09/19/13)
Part 4 – Page 29 of 33
PURCHASE ORDER NO: 24590-QL-POA-JA03-00006
Rev. 0

# Part 4 – General Conditions

*Bechtel National, Inc.*
*Hanford Tank Waste Treatment and Immobilization Plant (WTP)*

Purchase Order No.: ***24590-QL-POA-JA03-00006***
Rev.: ***0***

| **APPLICABLE TO ALL PURCHASE ORDERS OVER $3,000** | | |
|---|---|---|
| **FAR/DEAR Reference** | **Title** | **Instructions** |
| 52.222-54 | Employment Eligibility Verification (JAN 2009) | This clause applies when work will be performed in whole or in part in the United States.<br>This clause does not apply to: 1) Subcontracts with self-employed individuals, 2) Subcontracts with a value less than $3,000, or 3) Purchases of COTS Items.<br>Notwithstanding any other audit provisions contained within this subcontract, Contractor reserves the right, from time to time as Contractor deems appropriate, to request satisfactory proof of compliance from Subcontractor and all lower tier Subcontracts. Therefore upon request, Subcontractor must be able to provide, at every tier, satisfactory proof of compliance with this clause for its lower tier Subcontractors. |

| **APPLICABLE TO ALL PURCHASE ORDERS OVER $10,000** | | |
|---|---|---|
| **FAR/DEAR Reference** | **Title** | **Instructions** |
| FAR 52.222-21 | Prohibition of Segregated Facilities (FEB 1999) | None. |
| FAR 52.222-26 | Equal Opportunity (FEB 1999) | None. |
| FAR 52.222-35 | Affirmative Action for Disabled Veterans and Veterans of the Vietnam Era (APR 1998) | None. |
| FAR 52.222-36 | Affirmative Action for Workers with Disabilities (JUN 1998) | None. |
| FAR 52.222-37 | Employment Reports on Disabled Veterans and Veterans of the Vietnam Era (JAN 1999) | None. |

| **APPLICABLE TO ALL PURCHASE ORDERS OVER $100,000** | | |
|---|---|---|
| **FAR/DEAR Reference** | **Title** | **Instructions** |
| FAR 52.203-6 | Restrictions on Subcontractor Sales to the Government (JUL 1995) | None. |
| FAR 52.203-7 | Anti-Kickback Procedures (JUL 1995) | Except (c) (1) subparagraph. |
| FAR 52.203-12 | Limitations on Payments to Influence Certain Federal Transactions (JUN 1997) | None. |

© 2009 Bechtel National, Inc., All Rights Reserved

# Part 4 – General Conditions

BECHTEL

*Bechtel National, Inc.*
*Hanford Tank Waste Treatment and Immobilization Plant (WTP)*
Purchase Order No.: ***24590-QL-POA-JA03-00006***
Rev.: ***0***

| APPLICABLE TO ALL PURCHASE ORDERS OVER $150,000 | | |
|---|---|---|
| **FAR/DEAR Reference** | **Title** | **Instructions** |
| FAR 52.204-4 | Printing/Copying Double-Sided on Recycled Paper (JUN 1996) | None. |
| FAR 52.215-2 | Audit and Records – Negotiation (JUN 1999) | Applies when cost or pricing data is required or when cost reporting is required. |
| FAR 52.219-8 | Utilization of Small Business Concerns (OCT 1999) | None. |
| FAR 52.227-2 | Notice and Assistance Concerning Patent and Copyright Infringement (AUG 1996) | None. |

| APPLICABLE TO ALL PURCHASE ORDERS OVER $700,000 | | |
|---|---|---|
| **FAR/DEAR Reference** | **Title** | **Instructions** |
| FAR 52.215-10 | Price Reduction for Defective Cost or Pricing Data (OCT 1997) | None. |
| FAR 52.215-11 | Price Reduction for Defective Cost or Pricing Data–Modifications (OCT 1997) | None. |
| FAR 52.215-12 | Subcontractor Cost or Pricing Data (OCT 1997) | None. |
| FAR 52.215-13 | Subcontractor Cost or Pricing Data–Modifications (OCT 1997) | None. |
| FAR 52.215-20 | Requirements for Cost or Pricing Data or Information Other than Cost or Pricing Data (OCT 1997) | None. |
| FAR 52.215-21 | Requirements for Cost or Pricing Data or Information Other than Cost or Pricing Data - Modifications (OCT 1997) | None. |

## APPLICABLE FULL TEXT CLAUSES FROM CONTRACTOR'S PRIME CONTRACT

### 1. LABOR RELATIONS (Ref: Prime Contract Clause H.8)

***(Applies to all purchase orders)***

(a) The Contractor, and its major subcontractors, will respect the rights of employees, (1) to organize, form, join, or assist labor organizations; bargain collectively through representatives of the employees own choosing; and engage in other protected concerted activities for the purpose of collective bargaining, or (2) to refrain from such activities.

(b) To the extent required by law, the Contractor and its major subcontractors shall give notice to any lawfully designated representative of its employees for purposes of collective bargaining and, upon proper request, bargain to good faith impasses or agreement, or otherwise satisfy applicable bargaining obligations.

(c) The Contractor shall promptly advise the Contracting Officer of, and provide all appropriate documentation regarding, any labor relations developments at the prime or subcontract level that involve or appear likely to involve:

(1) Possible strike situations affecting the facility;

© 2009 Bechtel National, Inc., All Rights Reserved
KA04a Part 4 – General Conditions (Commercial)
24590-AF00379 (Rev 8 09/19/13)
Part 4 – Page 31 of 33
PURCHASE ORDER NO: 24590-QL-POA-JA03-00006
Rev. 0

(2) Referral to the Energy Labor-Management Relations Panel;

(3) The National Labor Relations Board at any level;

(4) Recourse to procedures under the *Labor-Management Act of 1947*, as amended, or any other Federal or state labor law; and

(5) Any grievance that may reasonably be assumed to be arbitrated under a Collective Bargaining Agreement.

**2. AGE DISCRIMINATION IN EMPLOYMENT (Ref: Prime Contract Clause H.11)**

***(Applies to all purchase orders)***

The Contractor shall not discriminate against any employee, applicant for employment, or former employee on the basis of age. The Contractor shall comply with the *Age Discrimination in Employment Act*, with any state or local legislation regarding discrimination based on age, and with all applicable regulations thereunder.

**3. ADDITIONAL RIGHTS IN INVENTIONS AND TECHNICAL DATA (Ref: Prime Contract Clause H.38)**

***(Applies to all purchase orders)***

In addition to rights specified elsewhere, the Contractor agrees that it will, upon request by the Government, grant to the Government, and others action on behalf of the Government, an irrevocable, non-exclusive, paid-up license in and to any inventions or discoveries regardless of when conceived or actually reduced to practice or acquired by the Contractor, and any other intellectual property, including technical data, which are owned or controlled by the Contractor, at any time through completion of this Contract. This right of the Government shall apply to inventions, discoveries, and intellectual property, including technical data, that are incorporated or embodied in the construction or design of the Waste Treatment and Immobilization Plant (WTP) or which are utilized in the operation of the WTP or which cover articles, materials, or products manufactured at the WTP. The acceptance or exercise by the Government of the previously mentioned rights and license shall not prevent the Government at any time from contesting the enforceability, validity, or scope of, or title to, and rights or patents or other intellectual property herein licensed.

The Contractor shall take all necessary steps to assign permits, authorizations, leases, and any licenses in any third party intellectual property for design, construction, operation, and closure of the WTP to U.S. Department of Energy (DOE) or such other third party as DOE may designate.

**4. EMERGENCY CLAUSE**

***(Applies if any work is performed at the WTP Jobsite by SELLER'S technical representatives)***

(a) The Manager, Office of River Protection (ORP), or designee shall have sole discretion to determine when an emergency situation exists as a result of facility operations within the physical boundaries defined by this Contract affecting personnel, public health, safety, the environment, or security. The Manager, Richland Operations Office (RL), or designee has the discretion to determine when an emergency condition exists elsewhere on the Hanford Site that

© 2009 Bechtel National, Inc., All Rights Reserved

may affect ORP employees. In the event that either the ORP or RL Manager or designee, determines that an emergency exists, the Manager, Office of River Protection, or designee will have the authority to direct any and all activities of the Contractor and subcontractors necessary to resolve the emergency situation. The Manager, Office of River Protection, or designee may direct the activities of the Contractor and subcontractors throughout the duration of the emergency.

(b) The Contractor shall include this clause in all subcontracts at any tier for work performed at the Hanford Site.

**ATTACHMENT A - RESTRICTED MATERIALS LIST**

**ATTACHMENT B - PARTIAL RELEASE AND CERTIFICATE OF PAYMENT FORM**

**ATTACHMENT C - RELEASE AND CERTIFICATE OF FINAL PAYMENT FORM**

**ATTACHMENT D - BUY AMERICAN ACT/TRADE AGREEMENTS ACT - MATERIAL CONFORMANCE STATEMENT FORM**

**ATTACHMENT E - BUYER'S GOVERNMENT OWNED EQUIPMENT/MATERIALS FURNISHED TO SELLER**
**RESERVED**

**ATTACHMENT F - DEPARTMENT OF ENERGY AND/OR DEPARTMENT OF COMMERCE SUBCONTRACTOR PRE-QUALIFICATION CERTIFICATION**
**RESERVED**

**ATTACHMENT G - SECURITY PLAN FOR THE PROTECTION OF EXPORT CONTROLLED INFORMATION**
**RESERVED**

**ATTACHMENT H - SMALL BUSINESS SUBCONTRACTING PLAN**
**RESERVED**

**ATTACHMENT I - WTP FTP REQUEST**

© 2009 Bechtel National, Inc., All Rights Reserved